**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 DEC -2  PM 4: 25

CLERK

BY_____
DEPUTY CLERK

THE HUMANE SOCIETY OF THE )
UNITED STATES, )
 )
    Plaintiff, )
 )
 )
v. )
 )
    Civil Action No. 5:10-CV-294
MANCHESTER CAPITAL )
MANAGEMENT, LLC and )
BAYARD R. KRAFT, III, )
 )
    JURY TRIAL DEMANDED
    Defendants. )
 )

---

## COMPLAINT

    Plaintiff, THE HUMANE SOCIETY OF THE UNITED STATES ("The HSUS"), sues Defendants, MANCHESTER CAPITAL MANAGEMENT, LLC ("Manchester") and BAYARD R. KRAFT, III ("Kraft"), and alleges as follows:

### PARTIES

### The HSUS and its Charitable Work

    1.   The HSUS is a non-stock, non-profit corporation organized under the laws of the State of Delaware with its headquarters at 2100 L Street, N.W., Washington, D.C. and its

principal place of business in the State of Maryland.   The HSUS is also a tax-exempt public charity under Internal Revenue Code §§ 501(c)(3) and 170(b)(1)(A)(vi).

2.   Established in 1954, The HSUS's charitable mission is to reduce suffering and to create meaningful change for animals by advocating for sensible public policies, investigating cruelty and working to enforce existing laws, educating the public about animal issues, joining with corporations to promote animal-friendly policies, and conducting hands-on programs that make the world more humane.

## Manchester Capital and its Wealth Management Business

3.   Manchester is a Vermont limited liability company with its principal place of business at 3657 Main Street, Manchester Village, Vermont.

4.   Kraft is an individual and citizen of the State of Vermont.   Upon information and belief, Kraft served as Vice President of Manchester at all times relevant to the allegations contained herein.

5.   Manchester specializes in the provision of customized investment management advice and services for individuals, families, foundations, endowments, trusts, and corporate retirement plans.

2

6.   As part of its wealth management strategy, Manchester organizes limited partnership investment vehicles, wherein Manchester acts as a general partner and offers limited partnership interests in those vehicles to its clients.

## JURISDICTION AND VENUE

7.   The claims asserted herein arise under and pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

8.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  This Court also has (i) supplemental jurisdiction over the state claims in this action pursuant to 28 U.S.C. § 1367, as they are so related to the federal claim in this action that they form part of the same case or controversy under Article III of the United States Constitution; and (ii) diversity jurisdiction over the state claims in this action pursuant to 28 U.S.C. § 1332, due to diversity of citizenship between Plaintiff and Defendants and because this is an action for damages in excess of $75,000., exclusive of interest, costs, and attorneys' fees.

9.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (i) a substantial part of the acts

3

giving rise to the claims alleged herein occurred within this judicial district; and (ii) Defendants reside in this judicial district.

10.   In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

## OVERVIEW

11.   Plaintiff, The HSUS, brings this securities fraud action against Defendants, Manchester and Kraft, for making materially false and misleading statements and omissions in connection with the sale of a security interest in a Vermont limited partnership organized by Manchester on October 1, 2008. The limited partnership, Equinox Alternative Offshore Fund, L.P. ("Equinox"), operates as an investment vehicle, with Manchester acting as general partner.   Manchester receives a quarterly fee based on the value of all assets invested by The HSUS through Manchester, including all assets invested in Equinox.

12.   The HSUS purchased an initial limited partnership interest in Equinox on October 1, 2008.  As part of the purchase, The HSUS transferred $10. million in capital to Manchester.   In its capacity as general partner, Manchester, solely for Equinox's own internal purposes, treated the $10. million in capital as "at

4

risk" and thus subject to profit or loss from October 1, 2008 onward.

13. After The HSUS purchased its initial limited partnership interest in Equinox, Manchester presented The HSUS with an opportunity to purchase an additional interest in the partnership. Through multiple statements and documents, Manchester indicated to The HSUS that the transaction date of any additional purchase would be November 1, 2008. Unbeknownst to The HSUS, Manchester, solely for Equinox's own internal purposes, intended to treat any capital received from the additional purchase as retroactively "at risk" and thus subject to profit or loss from October 1, 2008 onward, rather than November 1, 2008.

14. The HSUS subsequently executed a subscription agreement to purchase the additional interest in Equinox and transferred $5.0 million in capital to Manchester, which Manchester treated as "at risk" from October 1, 2008 onward. Due to the October 2008 market performance of Equinox's investments, Manchester's backdating of The HSUS's $5.0 million investment immediately reduced its initial value by approximately $240,000., a loss of about 4.8% in the principal, which in turn caused the loss of future gains attributable to the initial $240,000. loss. Kraft acted as the authorized signatory for Manchester on the subscription agreement.

15.   In sum, Manchester and Kraft failed to disclose to The HSUS the intended October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution to Equinox, a fact material to The HSUS's decision to purchase an additional interest in Equinox and which Manchester was under a duty to disclose in its role as general partner of Equinox.

16.   By engaging in the misconduct described herein, Defendants made materially false and misleading statements and omissions in connection with the sale of a security that violated Section 10(b) of the Exchange Act and SEC Rule 10b-5, and constituted fraud, negligence, and breach of fiduciary duty under Vermont law.   Plaintiff seeks compensatory and exemplary damages, costs and reasonable attorneys' fees, and such equitable and other relief as just and proper.

## SUBSTANTIVE ALLEGATIONS

### Equinox Alternative Offshore Fund, L.P. and its Investments

17.   Equinox is a limited partnership organized by Manchester under the laws of the State of Vermont on October 1, 2008.

18.   Equinox operates as an investment vehicle and offers securities in the form of limited partnership interests to qualified individuals and institutions.

6

19.  To complete the acquisition of a limited partnership interest in Equinox, investors are required to sign a subscription agreement binding them to Equinox's limited partnership agreement and requiring them to make a minimum capital contribution of $250,000.

20.  The interest acquired by a limited partner in Equinox is expressed as a percentage calculated by dividing the limited partner's capital contribution by the sum of the capital accounts of all partners, general and limited, as of the date of the limited partner's contribution.  The partnership percentage for each limited partner is recalculated at the beginning of each fiscal period.

21.  Equinox's profits and losses are allocated among all partners, general and limited, in proportion to their partnership percentage.

22.  Manchester is the sole general partner of Equinox and is responsible for monitoring and administering the partnership and its investments.

23.  Manchester receives a quarterly fee based on the value of all assets invested by The HSUS through Manchester, including all assets invested in Equinox.

24.  Other than short-term investments in money market or commercial bank accounts, Equinox invests substantially all of its capital in Elliott International Limited (the "Elliott

Company"), a company incorporated under the laws of the Cayman Islands.

### The HSUS'S Initial Limited Partnership Interest in and Capital Contribution to Equinox

25. Prior to the organization of Equinox on October 1, 2008, Manchester, in its role as general partner, offered a limited partnership interest in Equinox to The HSUS.

26. On or about September 22, 2008, Manchester provided The HSUS with a subscription agreement for a limited partnership interest in Equinox (the "Original Equinox Subscription Agreement").

27. Kraft acted as the authorized signatory for Manchester on the Original Equinox Subscription Agreement.

28. On September 22, 2008, The HSUS executed the Original Equinox Subscription Agreement and committed to make an initial capital contribution of $10. million to Equinox.

29. On or about October 1, 2008, The HSUS transferred $10. million in capital to Manchester and was admitted to Equinox as a limited partner.

30. Solely for Equinox's own internal purposes, Manchester treated The HSUS's $10. million capital contribution as "at risk" and thus subject to profit or loss from October 1, 2008 onward.

**Manchester's Materially False and Misleading**
**Statements and Omissions Made in Connection with**
**The HSUS'S Additional Capital Contribution to Equinox**

31. On or about September 29, 2008, Manchester presented The HSUS with an opportunity to make an additional subscription and $5.0 million capital contribution to Equinox.

32. In an e-mail to members of The HSUS's investment committee dated September 29, 2008, Greg Van Wyk ("Van Wyk"), Senior Investment Manager at Manchester, stated:

> "We will be able to fund additional investments in Elliott as late as November 1 . . . [W]e (Manchester) recommend the investment committee of the HSUS consider an additional $5 to $10MM investment in Elliott Associates . . . To be clear – this is in addition to the $10MM that has already been approved."

33. On October 3, 2008, Van Wyk provided The HSUS's investment committee with a document titled "HSUS INVESTMENT COMMITTEE AGENDA" that stated:

> "Recommendation or topic for discussion: Increase allocation to Elliott Associates LP from $10MM to $15MM . . . Decision timeframe: Decision by October 15th, funding no later than November 1, 2008."

34. On November 6, 2008, Manchester provided The HSUS with a subscription request agreement for an additional subscription and capital contribution to Equinox (the "Additional Equinox Subscription Agreement"). In an e-mail accompanying the document, Van Wyk stated:

> "I have also attached the additional subscription document for the $5MM Nov 1 investment in Elliott."

9

35.   Kraft acted as the authorized signatory for Manchester on the Additional Equinox Subscription Agreement.

36.   The Additional Equinox Subscription Agreement listed the "ADDITIONAL SUBSCRIPTION AMOUNT" as $5.0 million and the "DATE OF ADDITIONAL OF [sic] SUBSCRIPTION" as November 1, 2008.

37.   The Additional Equinox Subscription Agreement made no reference to The HSUS's $5.0 million additional capital contribution being treated as made on October 1, 2008.

38.   At no time, prior and up to The HSUS's execution of the Additional Equinox Subscription Agreement, did any employee or individual affiliated with Manchester or Kraft indicate to The HSUS that its $5.0 million additional capital contribution would be treated as "at risk" and subject to profit or loss from October 1, 2008 onward.

39.   The statements contained in Paragraphs 32-34 and 36 were materially false and misleading when made because Manchester and Kraft failed to disclose that The HSUS's $5.0 million additional capital contribution would be treated as "at risk" and subject to profit or loss from October 1, 2008, rather than November 1, 2008.

## Manchester's Backdating of
## The HSUS'S Additional Capital Contribution

40.  On or about November 3, 2008, The HSUS transferred an additional $5.0 million in capital to Manchester.

41.  On or about November 6, 2008, The HSUS executed the Additional Equinox Subscription Agreement.

42.  Solely for Equinox's own internal purposes, Manchester treated The HSUS's $5.0 million additional capital contribution as "at risk" and subject to profit or loss from October 1, 2008 onward.

43.  The federal securities claim in this action is timely brought pursuant to 28 U.S.C. § 1658(b) within two years after the discovery of the facts constituting a violation of Section 10(b) of the Exchange Act and SEC Rule 10-b5 or five years after such violation.  On December 5, 2008, The HSUS received from Manchester a routine, monthly portfolio performance statement for November 2008 (the "December 5 Statement").  The December 5 Statement listed the "Purchase Date" of The HSUS's investment in "Elliott Associates" as October 1, 2008 and the "Cost Basis" of the investment as $15. million.  The December 5 Statement was the first time that any information was received by The HSUS concerning an October 1, 2008 investment date.  Plaintiff believes that the December 5 Statement does not constitute actual notice of the Defendants' wrongdoing and that the first actual

notice came in an October 2009 contact with the Plaintiff.   In any event, this action complies with 28 U.S.C. § 1658(b), regardless of which date constitutes the commencement of Plaintiff's actual notice.

### LOSS CAUSATION/ECONOMIC LOSS

44. Manchester and Kraft's wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by The HSUS.  As a result of its additional subscription and capital contribution to Equinox, The HSUS suffered economic loss, i.e., damages, under the federal securities laws.

45. Equinox's investment in the Elliott Company suffered a loss of approximately 4.8% during October 2008.

46. On or about November 1, 2008, based on the October 2008 performance of Equinox's investment in the Elliott Company, Manchester allocated a loss of approximately $240,000. to The HSUS on its additional $5.0 million investment.

47. The HSUS would not have incurred the $240,000. loss allocated to it on or about November 1, 2008 had Manchester not backdated The HSUS's additional $5.0 million capital contribution to October 1, 2008.  If Manchester had treated The HSUS's additional contribution as "at risk" and thus subject to profit or loss on November 1, 2008, The HSUS's additional contribution

would not have been subject to any losses resulting from Equinox's investments during October 2008.

48. In sum, Manchester's backdating of The HSUS's additional capital contribution immediately reduced the initial value of the $5.0 million investment to approximately $4.76 million, a loss of about 4.8%, and also deprived The HSUS of any future gains realized on the approximately $240,000. lost on or about November 1, 2008.

## SCIENTER ALLEGATIONS

49. Defendants had both the motive and opportunity to commit fraud in connection with The HSUS's $5.0 million additional capital contribution to Equinox. They also had actual knowledge of the misleading nature of the statements they made or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit upon The HSUS as a purchaser of a security interest in Equinox.

50. Upon information and belief, at the time that it presented The HSUS with the opportunity to make its $5.0 million additional contribution to Equinox, Manchester intended, solely for Equinox's own internal purposes, to treat The HSUS's

additional contribution as "at risk" and thus subject to profit or loss from October 1, 2008 onward.

51.  Upon information and belief, at the time that Manchester presented The HSUS with the opportunity to make its $5.0 million additional contribution to Equinox, Kraft, in his capacity as Vice President of Manchester and authorized signatory on the Additional Equinox Subscription Agreement, had actual knowledge that Manchester intended, solely for Equinox's own internal purposes, to treat The HSUS's additional contribution as "at risk" and thus subject to profit or loss from October 1, 2008 onward.

52.  Upon information and belief, at the time that it presented The HSUS with the opportunity to make its $5.0 million additional contribution to Equinox, Manchester knew that Equinox's investment in the Elliott Company was performing at a loss during October 2008 and that such loss would be allocated accordingly to The HSUS's additional contribution.

53.  Upon information and belief, at the time that Manchester presented The HSUS with the opportunity to make its $5.0 million additional contribution to Equinox, Kraft, in his capacity as Vice President of Manchester and authorized signatory on the Additional Equinox Subscription Agreement, had actual knowledge that Equinox's investment in the Elliott Company was

14

performing at a loss during October 2008 and that such loss would be allocated accordingly to The HSUS's additional contribution.

## CLAIMS FOR RELIEF

### FIRST CLAIM

### Section 10(b) of the Exchange Act and SEC Rule 10b-5 Against Manchester and Kraft

54.  Paragraphs 1-53 are realleged and incorporated herein by reference.

55.  Defendants carried out a plan, scheme, and course of conduct which was intended to and did (i) deceive The HSUS as alleged herein; and (ii) cause The HSUS to purchase an additional interest in and provide an additional capital contribution to Equinox without knowledge of the intended October 1, 2008 "at risk" treatment of its investment.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

56.  Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon The HSUS as a purchaser of a security interest in Equinox in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

## SECOND CLAIM

### Fraudulent Nondisclosure

57.   Paragraphs 1-53 are realleged and incorporated herein by reference.

58.   Prior to and at the time that The HSUS executed the Additional Equinox Subscription Agreement, Defendants knew that The HSUS's $5.0 million additional capital contribution to Equinox would be treated as "at risk" and thus subject to profit or loss beginning on October 1, 2008, instead of November 1, 2008.

59.   As general partner of Equinox, Manchester owed a fiduciary duty of honesty and loyalty to The HSUS, a limited partner of Equinox, including the duty to disclose to The HSUS all facts material to its decision to purchase an additional interest in Equinox.

60.   The October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution was material to The HSUS's decision to purchase an additional interest in Equinox, as it impacted the potential for profit or loss associated with the purchase and therefore affected the essence of the transaction.

61.   Prior to and at the time that The HSUS executed the Additional Equinox Subscription Agreement, The HSUS had no knowledge that its additional capital contribution would be

treated as "at risk" and subject to profit or loss beginning on October 1, 2008, instead of November 1, 2008.

62. Prior to and at the time that The HSUS executed the Additional Equinox Subscription Agreement, Defendants intentionally failed to disclose to The HSUS that its additional capital contribution would be treated as "at risk" and subject to profit or loss from October 1, 2008 onward. At no point, prior to and at the time that The HSUS executed the Additional Equinox Subscription Agreement, did Manchester, its employees, or any individual affiliated with Manchester convey to The HSUS the intended October 1, 2008 "at risk" treatment of its contribution.

63. Defendants' nondisclosure of the October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution induced The HSUS to agree to purchase an additional interest in Equinox.

64. Manchester benefited from The HSUS's purchase of an additional interest in Equinox in the form of an increased basis for calculating its quarterly fee.

65. Due to its reliance on Defendants' nondisclosure of the October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution, The HSUS suffered economic loss in the form of both the initial value of The HSUS's $5.0 million contribution as well as any future gains realized on the amount instantly lost on or about November 1, 2008.

## THIRD CLAIM

### Negligent Failure to Disclose

66.  Paragraphs 1-53 are realleged and incorporated herein by reference.

67.  Prior to and at the time that The HSUS executed the Additional Equinox Subscription Agreement, Defendants knew that The HSUS's $5.0 million additional capital contribution to Equinox would be treated as "at risk" and thus subject to profit or loss beginning on October 1, 2008, instead of November 1, 2008.

68.  Prior to and at the time that The HSUS executed the Additional Equinox Subscription Agreement, Defendants knew that the October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution might justifiably induce The HSUS to agree or not agree to purchase an additional interest in Equinox.

69.  The October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution was material to The HSUS's decision to purchase an additional interest in Equinox, as it impacted the potential for profit or loss associated with the purchase.

70.  Defendants had a duty to disclose to The HSUS the October 1, 2008 "at risk" treatment of its additional capital contribution because (i) as general partner of Equinox,

Manchester owed a fiduciary duty of honesty and loyalty to The HSUS, a limited partner of Equinox, including the duty to disclose to The HSUS all facts material to its decision to purchase an additional interest in Equinox; and (ii) disclosure of the October 1, 2008 "at risk" treatment of the contribution was necessary to prevent Defendants' partial or ambiguous statements regarding November 1, 2008 as the transaction date of the contribution from being misleading.

71.  Prior to and at the time that The HSUS executed the Additional Equinox Subscription Agreement, Defendants never disclosed nor attempted to disclose to The HSUS the October 1, 2008 "at risk" treatment of its additional capital contribution and failed to exercise reasonable care to disclose the October 1, 2008 "at risk" treatment of the contribution to The HSUS.

72.  Defendants' nondisclosure of the October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution induced The HSUS to purchase an additional interest in Equinox.

73.  Due to its reliance on Defendants' nondisclosure of the October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution, The HSUS suffered economic loss in the form of both the initial value of The HSUS's $5.0 million contribution as well as any future gains realized on the amount instantly lost on or about November 1, 2008.

## FOURTH CLAIM

### Breach of Fiduciary Duty

74. Paragraphs 1-53 are realleged and incorporated herein by reference.

75. As general partner of Equinox, Manchester owed a fiduciary duty of honesty and loyalty to The HSUS, a limited partner of Equinox, including the duty to disclose to The HSUS all facts material to its decision to purchase an additional interest in Equinox.

76. Defendants breached their fiduciary duty to The HSUS by failing to disclose to The HSUS the October 1, 2008 "at risk" treatment of its additional capital contribution.

77. Due to its reliance on Defendants' nondisclosure of the October 1, 2008 "at risk" treatment of The HSUS's additional capital contribution, The HSUS suffered economic loss in the form of both the initial value of The HSUS's $5.0 million contribution as well as any future gains realized on the amount instantly lost on or about November 1, 2008.


### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A. An award of compensatory damages against Defendants in an amount to be determined at trial, but not less than $75,000.

B.     An award of exemplary damages against Defendants in an amount to be determined at trial.

C.     An award of Plaintiff's costs, expenses, and reasonable attorneys' fees.

D.     A grant of such equitable and other relief as this Court may deem just and proper.


Submitted this 2nd day of December, 2010.


Respectfully submitted:


BY: _____

**JOHNSON AND PERKINSON**
Dennis J. Johnson
Eben F. Duval
1690 Williston Rd.
South Burlington, VT 05403
Telephone: (802) 862-0030
eduval@jpclasslaw.com


And


**BERMAN DEVALERIO**
Glen DeValerio
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
gdevalerio@bermandevalerio.com